FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 30, 2023

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BONNIE BASEL JEAHD C., JR.[1] | No: 1:21-cv-03110-LRS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 8, 9. This matter was submitted for consideration without oral argument.

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy. *See* LCivR 5.2(c).

ORDER - 1

Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Nancy C. Zaragoza.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 8, is denied and Defendant's Motion, ECF No. 9, is granted.

## JURISDICTION

Plaintiff Bonnie Basel Jeahd C. (Plaintiff), filed for disability insurance benefits (DIB) on July 25, 2017, alleging an onset date of March 1, 2014, which was later amended to April 1, 2016.  Tr. 45, 219-19.  Benefits were denied initially, Tr. 131-34, and upon reconsideration, Tr. 139-45.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 27, 2018.  Tr. 41-86.  On November 21, 2018, the ALJ issued an unfavorable decision, Tr. 17-40.  On March 8, 2019, the Appeals Council denied review.  Tr. 1-6.  Plaintiff appealed to the U.S. District Court for the Eastern District of Washington, and on June 30, 2020, the Honorable Robert H. Whaley issued an order remanding the case for further proceedings.  Tr. 1169-88.  After a second hearing on April 7, 2021, Tr. 1112-38, the ALJ issued another unfavorable decision on June 11, 2021.  Tr. 1086-1111.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

ORDER - 2

**BACKGROUND**

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1972. Tr. 49. He was in the military for 20 years. Tr. 1124. At the time of the first hearing, he had been attending community college full-time for three years on the G.I. Bill. Tr. 50. He served as a motor team maintenance chief in the military. Tr. 79. He also has work experience at Home Depot. Tr. 53. He last worked as a mechanic at a tire shop until he was laid off for lack of work. Tr. 53. He testified that he is unable to work due to pain every day. Tr. 52. He has pain in his shoulder and neck caused by an injury while serving in the military. Tr. 52, 59. He does not get along with people very well. Tr. 54. He prefers to drink alcohol rather than take medication for his pain. Tr. 56. He testified that medication has not helped. Tr. 57. He has carpal tunnel syndrome, so he has difficulty picking things up. Tr. 58. He has symptoms from a traumatic brain injury and PTSD. Tr. 69.

At the time of the second hearing, Plaintiff testified that his condition had gotten worse. Tr. 1117. He gets headaches at least twice a week that require him to lie down. Tr. 1118. He has shoulder and hand issues and problems with his spine. Tr. 1119. He had carpal tunnel surgery, but now his left elbow is numb. Tr. 1120. He has difficulty with people. Tr. 1122-23.

ORDER - 3

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from

1    "any impairment or combination of impairments which significantly limits [his or

2    her] physical or mental ability to do basic work activities," the analysis proceeds to

3    step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy

4    this severity threshold, however, the Commissioner must find that the claimant is not

5    disabled.  20 C.F.R. § 404.1520(c).

6         At step three, the Commissioner compares the claimant's impairment to

7    severe impairments recognized by the Commissioner to be so severe as to preclude a

8    person from engaging in substantial gainful activity.  20 C.F.R. §

9    404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

10   enumerated impairments, the Commissioner must find the claimant disabled and

11   award benefits.  20 C.F.R. § 404.1520(d).

12        If the severity of the claimant's impairment does not meet or exceed the

13   severity of the enumerated impairments, the Commissioner must assess the

14   claimant's "residual functional capacity."  Residual functional capacity (RFC),

15   defined generally as the claimant's ability to perform physical and mental work

16   activities on a sustained basis despite his or her limitations, 20 C.F.R. §

17   404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

18        At step four, the Commissioner considers whether, in view of the claimant's

19   RFC, the claimant is capable of performing work that he or she has performed in the

20   past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable

21   of performing past relevant work, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from his amended alleged onset date of April 1, 2016, through his date last insured of September 30, 2019.  Tr. 1092.  At step two, the ALJ

found that through the date last insured, Plaintiff had the following severe impairments:  status post traumatic brain injury; headaches; chronic obstructive pulmonary disease (COPD); cervical radiculopathy; degenerative disc disease; degenerative joint disease; status post rotator cuff repairs; depression; post-traumatic stress disorder (PTSD); alcohol use disorder.  Tr. 1092.  At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 1093.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform light work with the following additional limitations:  occasional balancing, stooping, kneeling, crouching, crawling, and climbing; occasional reaching overhead; no concentrated exposure to temperature extremes, respiratory irritants, and vibration; no team work with coworkers or more than occasional, incidental interaction with the public.  Tr. 1095.

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.  Tr. 1102.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there were other jobs that exist in significant numbers in the national economy that Plaintiff could have performed such as marker, production assembler, or routing clerk.  Tr. 1103-04.  Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security

Act, at any time from April 1, 2016, the amended alleged onset date, through

September 30, 2019, the date last insured.  Tr. 1104.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

disability income benefits under Title II of the Social Security Act.  ECF No. 8.

Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered Plaintiff's symptom testimony; and

2.    Whether the ALJ properly considered the medical opinion evidence.

ECF No. 8 at 1.

### DISCUSSION

**A.    Symptom Testimony**

Plaintiff contends the ALJ improperly rejected his symptom testimony.  ECF

No. 8 at 8-14.  An ALJ engages in a two-step analysis to determine whether a

claimant's testimony regarding subjective pain or symptoms is credible.  "First, the

ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only show

that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found Plaintiff made inconsistent allegations regarding matters relevant to the issue of disability. Tr. 1095. An ALJ may reject a claimant's

testimony if his statements are inconsistent.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ observed that in August 2017, Plaintiff alleged he had a "constant pain level of 10," that he could only be on his feet for five to ten minutes at a time, and that he could not lift anything without being in pain.  Tr. 283-90.  However, at an October 2017 evaluation, Plaintiff reported he could comfortably stand for 20-30 minutes at a time, sit for about 30 minutes before needing to change positions, and comfortably lift 10 pounds.  Tr. 731.  The ALJ also noted that in February 2018, Plaintiff reported worsened pain and symptoms, Tr. 294, even though he had already claimed to be at a constant pain level of 10.  Tr. 1096.  This is a clear and convincing reason supported by substantial evidence.

Plaintiff argues the ALJ incorrectly found another inconsistency.  ECF No. 8 at 9.  The ALJ noted that in August 2017, Plaintiff alleged he can only pay attention for five to ten minutes at a time, Tr. 288, but in October 2017, his ability to concentrate and maintain a good attention span was good.  Tr. 1095 (citing Tr. 718).  Plaintiff observes that the October 2017 statement that his concentration span and attention were good was a psychologist's assessment during a psychological evaluation, Tr. 718, and not an inconsistent report from Plaintiff.  ECF No. 8 at 9.  Accordingly, this is not an inconsistency in Plaintiff's report of symptoms as stated by the ALJ, but it is an objective finding undermining his allegation.  To the extent the ALJ misplaced this discussion of the evidence within the decision, any error is

harmless.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Second, the ALJ found Plaintiff has sought only conservative treatment or did not seek treatment for certain complaints.  Tr. 1096-97.  Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. § 404.1529(c)(4)(iv)-(v).  The ALJ is permitted to consider the claimant's lack of treatment or conservative treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that [he] experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that [he] received").

The ALJ noted that Plaintiff complained of debilitating symptoms and pain, but only sought conservative treatment including chiropractic care, physical therapy, use of a TENS unit, and injections.  Tr. 1096.  Plaintiff argues that his treatment was "far more extensive," citing February 2015 exam notes indicating he had tried opioids, muscle relaxants, NSAIDs, cervical steroid injections, and radiofrequency neurotomy of right C5-C7 branches.  ECF No. 8 at 9 (citing Tr. 673).  This treatment note predates the alleged onset date and relates to a period for which Plaintiff was

previously denied disability.  Tr. 1090.  Other examples cited by Plaintiff predate the

alleged onset date.  ECF No. 8 at 10 (citing Tr. 607, 613, 629).  If the ALJ was

referencing treatment during the relevant period, the ALJ was correct.  Tr. 1090.

However, given that the Defendant's brief takes no position on this issue, ECF No. 9

at 3-10, and viewing the evidence in the light most favorable to Plaintiff, this is not

substantial evidence supporting the ALJ's reasoning.  To the extent that this could be

construed as error, it is harmless as the ALJ cited other clear and convincing reasons

supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

Third, the ALJ found the objective evidence does not reflect the severe

limitations alleged.  Tr. 1096-97.  While subjective pain testimony may not be

rejected solely because it is not corroborated by objective medical findings, the

medical evidence is a relevant factor in determining the severity of a claimant's pain

and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ noted diagnostic imaging revealed only mild or minimal objective findings.

Tr. 1096 (citing Tr. 1071, 1866 (March 2013 cervical MRI), 1074 (diagnosis of

cervical radiculopathy), 846-48 (July 2016 EMG/nerve conduction study)).  The

ALJ also observed that later imaging does not indicate worsening of previous

findings.  Tr. 1096 (citing Tr. 844-45 (May 2016 cervical MRI), 394, 1671 (March

2018 cervical MRI), 1871-73, 1868-78 (March 2018 EMG/nerve conduction study),

1686, 1717 (February 2020 CT scan of head)).  Plaintiff does not address the

objective findings cited by the ALJ except to note that while the 2018 nerve

ORDER - 13

conduction study indicates no suggestion of cervical radiculopathy, it also states that

"a radiculopathic process affecting mostly the sensory nerve fibers cannot be

excluded by the EMG test."  ECF No. 8 at 10 (quoting Tr. 871).  This general

statement is not a finding which contradicts any of the ALJ's conclusions.

The ALJ also noted that despite Plaintiff's allegations of increasing shoulder

pain, longstanding intermittent low back pain, and progressively worsening knee

pain, Plaintiff did not seek treatment for any of these impairments other than in the

context of chronic pain complaints.  Tr. 1097.  Plaintiff does not challenge this

finding, and the ALJ's reasoning is supported by substantial evidence.

Fourth, the ALJ found Plaintiff did not comply with treatment

recommendations.  Tr. 1097-98.  It is well-established that unexplained non-

compliance with treatment may be considered in evaluating a claimant's symptom

claims.  *See Molina*, 674 F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v.

Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603-04

(9th Cir. 1989).   The ALJ observed the record documents ongoing alcohol

abuse/dependence, and that providers have indicated that his poor sleep and alcohol

use were likely contributing to Plaintiff's irritability and emotional dysregulation

and were interfering with medications when he takes them.  Tr. 809-10, 991.  He

admitted to self-medicating with up to 12 beers a day even though his providers told

him it makes his symptoms worse.  Tr. 574, 638, 774, 788, 790, 803, 813, 941-42,

949-50, 954, 989, 1017, 1019, 1023.  Plaintiff testified in September 2018 that he had stopped alcohol for three months to allow medication to work, but also that he was not taking mental health medications of any kind.  Tr. 56-58.  He would self-medicate with up to 20 beers a night.  Tr. 55, 731, 1017.  The ALJ found Plaintiff is not taking steps to improve his symptoms, suggesting that his symptoms are not as bad as alleged.  Tr. 1097.  This is a clear and convincing reason supported by substantial evidence.

Fifth, the ALJ found Plaintiff stopped working for reasons unrelated to disability.  Tr. 1098.  An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in considering the claimant's allegations of pain.  *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ noted Plaintiff indicated he stopped working because he was laid off due to lack of work rather than due to his alleged limitations.  Tr. 53, 244, 308.  It was reasonable for the ALJ to conclude that Plaintiff could have continued working, even with his impairments at that time.  Tr. 1098.  This is clear and convincing reason supported by substantial evidence.

Sixth, the ALJ found Plaintiff's ongoing schooling suggests abilities inconsistent with Plaintiff's alleged limitations.  Tr. 1098. An ALJ may consider good academic performance as an activity that is inconsistent with a claimant's reported functioning.  *See Anderson v. Astrue*, No. 09-CV-220-JPH, 2010 WL 2854241, at *6 (E.D. Wash. July 19, 2010); *Payton v. Comm'r of Soc. Sec.*, No. CIV

S-09-0879-CMK, 2010 WL 3835732, at *10 (E.D. Cal. Sept. 29, 2010); *see also*

*Spittle v. Astrue*, No. 3:11-CV-00711-AA, 2012 WL 4508003, at *3 (D. Or. Sept.

25, 2012).  The ALJ noted Plaintiff reported attending school and studying for most

of the day, that he maintained a GPA of greater than 3.0 with no accommodations

during his three years of college, and that all of his classes had been in person on

campus except one.  Tr. 50, 52-53, 716, 732.  The ALJ found his ability to maintain

attendance and obtain passing grades "belies his allegations of debilitating

impairments and constant pain" and "would not be possible with [the] degree of

memory loss he described at the hearing."  Tr. 1098.  The ALJ concluded that

Plaintiff's ability to attend college indicates he is able to understand, remember, and

persist at activities; maintain attendance and adhere to a schedule; and interact with

others at least on an occasional, superficial basis.  Tr. 1098.  Plaintiff argues his

college activities do not demonstrate that he can work a full-time work schedule.

ECF No. 8 at 11-12.  However, even if a claimant's daily activities do not

demonstrate a claimant can work, they may undermine the claimant's complaints if

they suggest the severity of the claimant's limitations were exaggerated.  *See*

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  The

ALJ made reasonable inferences regarding Plaintiff's abilities based on his college

attendance, and this is a clear and convincing reason supported by substantial

evidence.

Seventh, the ALJ found Plaintiff's activities are not as limited as expected given complaints of disabling symptoms and limitations.  Tr. 1098.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints.  *See Rollins*, 261 F.3d at 857.  However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.  Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

The ALJ found that Plaintiff's description of his daily activities was inconsistent and cited multiple function and disability reports.  Tr. 1098 (citing Tr. 254-65, 279-90, 301-09, 310-18, 301, 326, 731).  The ALJ compared these records and Plaintiff's testimony and found inconsistencies in Plaintiff's reports regarding his ability to perform his own self-care and various household activities.  Tr. 1098-99.  To the extent there are inconsistencies in the record regarding household chores, they are minor, and Plaintiff's ability to engage in self-care and some basic

household tasks is not such compelling evidence that it constitutes a "convincing" reason.

However, the ALJ also cited Plaintiff's travel as an activity inconsistent with his alleged limitations. Plaintiff traveled four-and-a-half hours by car to visit family, with several stops to rest along the way. Tr. 63. The ALJ found this activity conflicts with Plaintiff's allegations that he can only sit for 10-15 minutes at a time. Tr. 294, 388, 1099. He also took a four-hour flight to New York to attend a memorial and barbeque. Tr. 1099. The ALJ noted Plaintiff indicated there was a big crowd at the barbeque and that Plaintiff visited with a number of others without difficulty, and concluded this activity is contrary to Plaintiff's allegations of extreme limitations in social functioning. Tr. 62, 1099. The ALJ also found that Plaintiff's college attendance indicates that Plaintiff is capable of managing himself in a normal daily or weekly routine, and that his activities conflicts with his self-reported limitations, which makes his self-report less reliable. Tr. 1099. Plaintiff contends that the ALJ should have inquired further about his travel to find out how his limitations may have been accommodated, but the ALJ asked about Plaintiff's travel at the hearing and Plaintiff had the opportunity provide additional information. Tr. 61-63. The ALJ reasonably found Plaintiff's activities are not consistent with the degree of limitation alleged, and this is a clear and convincing reason supported by substantial evidence.

**B.     Medical Opinion Evidence**

Plaintiff argues the ALJ erred in evaluating the opinions of Carol Flaugher, PA-C, and Delores Conrad, LICSW.  ECF No. 8 at 16-21.

For claims filed on or after March 27, 2017, new regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).[2]

---

[2] Plaintiff suggests the former "specific and legitimate" standard continues to apply despite the new regulations.  ECF No. 14-16.  The Ninth Circuit has determined that "the 'specific and legitimate' standard is clearly irreconcilable with the 2017 regulations." *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022).

ORDER - 19

1  *1. Carol Flaugher, PA-C*

2  In March 2018, Ms. Flaugher completed a Veterans Administration "Neck

3  (Cervical Spine) Conditions Disability Benefits Questionnaire." Tr. 979-88. She

4  indicated diagnoses of chronic sprain and perineural cyst, degenerative disc disease,

5  and degenerative facet arthritis. Tr. 980. She assessed a functional loss described

6  as: "Sitting limited to 10-15 minutes. Standing limited to 10-15 minutes. Walking

7  10-15 minutes. Looking up only seconds, looking down 5 minutes. Limited ROM

8  looking right and left. Lifting limited to 1 gallon of milk." Tr. 981. The ALJ found

9  Ms. Flaugher's opinion unpersuasive. Tr. 1101-02.

10  The regulations provide that the more consistent a medical opinion is with the

11  evidence from other medical and nonmedical sources in the claim, the more

12  persuasive the medical opinion will be. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). Here,

13  the ALJ found that Ms. Flaugher's opinion is not consistent with the medical

14  evidence, such as an absence of serious findings or aggressive treatment. Tr.1102;

15  *see supra*. The ALJ also noted that while Ms. Flaugher made some findings that

16  Plaintiff had muscle spasm and abnormal range of motion in the cervical spine, she

17  also found that he had normal/full muscle strength in his arms, no muscle atrophy,

18  normal reflexes, and normal sensation. Tr. 980-84, 1101. Plaintiff repeats the range

19  of motion and tenderness findings acknowledged by the ALJ but does not reconcile

20  the otherwise normal exam findings. ECF No 8 at 22. The medical evidence also

21

consists of the opinions of Dr. Virji, Tr. 126-27, and Dr. Drenguis, Tr. 730-35, whose opinions were found to be persuasive (with one exception in Dr. Drenguis' opinion) and who opined Plaintiff's limitations are less severe than Ms. Flaugher opined.  Tr. 1100.  The ALJ's finding is supported by substantial evidence.

Plaintiff also argues that Ms. Flaugher's opinion references the March 2018 cervical spine MRI and EMG/NCS testing showing bilateral carpal tunnel syndrome results, and therefore her opinion is supported.  ECF No. 8 at 18 (citing Tr. 987).  However, the ALJ made findings regarding the 2018 cervical MRI and other imaging and testing, and the analysis is supported by record, *see supra*.  Furthermore, the ALJ discussed Plaintiff's bilateral carpal tunnel syndrome which was repaired in October 2018 and found it was not a severe impairment because it did not meet the durational requirement.   Tr. 1092.

Additionally, the ALJ found that Ms. Flaugher's opinion was internally inconsistent.  Tr. 1101.  A medical opinion may be rejected by the ALJ if it contains inconsistencies.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  The ALJ observed that Ms. Flaugher opined that Plaintiff's C5-6 and C7 nerve roots were involved with symptoms of radiculopathy in his upper extremities that caused pain, paresthesia, and numbness. Tr. 985, 1101.  However, she contradicted this finding later in the evaluation by noting the 2018 cervical MRI indicated no cervical radiculopathy and by stating, "There is no diagnosis of

radiculopathy." Tr. 987, 1101.  It was reasonable for the ALJ to find this makes Ms. Flaugher's opinion less reliable.

The regulations provide that the more relevant the objective medical evidence and supporting explanations provided by a medical source, the more persuasive the medical opinion will be.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Here, the ALJ found that Ms. Flaugher's assessment that Plaintiff's "pain, fatigue, weakness, and lack of endurance" significantly limited his functional ability was not well-supported.  Tr. 1101.  She stated that Plaintiff had "Less movement than normal due to ankylosis, adhesions, etc., Weakened movement due to muscle or peripheral nerve injury, etc., Disturbance of locomotion, Interference with sitting, Interference with standing." Tr. 983.  The ALJ found the terms used by Ms. Flaugher such as "less than normal," "weakened," "disturbance," and "interference," are not defined and do not convey the extent of capacity limitation.  Tr. 1101-02.  An ALJ may reject an opinion that does "not show how [the claimant's] symptoms translate into specific functional deficits which preclude work activity."  *Morgan,* 169 F.3d at 601.  The ALJ's reasoning is supported by substantial evidence.

The ALJ also found Ms. Flaugher's functional assessment was not supported because it is based on Plaintiff's own statement.  Tr. 1102.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  Under "Medical History," Ms.

Flaugher was asked to described Plaintiff's description of functional loss or functional impairment "in his [] own words." Tr. 980. Plaintiff's "own words" were, "[s]itting limited to 10-15 minutes. Standing limited to 10-15 minutes. Walking 10-15 minutes. Looking up only seconds, looking down 5 minutes. Limited ROM looking right and left. Lifting limited to 1 gallon of milk." Tr. 980. This is exactly the same language used to explain Ms. Flaugher's opinion of Plaintiff's "functional loss," Tr. 982, "additional factors contributing to disability," Tr. 984, and "functional impact," Tr. 987. The ALJ found that Ms. Flaugher based her assessment on Plaintiff's self-report, which the ALJ reasonably found to be less than fully reliable, since she simply repeated Plaintiff's own description of his limitations. Tr. 1102. Plaintiff argues that the limitations are supported by other evidence in the record, but as discussed throughout this decision, the ALJ's interpretation of the record is supported by substantial evidence.

### 2. Delores Conrad, LICSW

In November 2020, Ms. Conrad completed a "Mental Source Statement" and assessed 11 marked limitations and five severe limitations, indicating that Plaintiff was unable to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers, the ability to be aware of hazards and take precautions, and in the ability to travel or use public transportation. Tr. 1343-44. She opined that Plaintiff would be off-task over 30% of the time during a 40-hour workweek, and that he would miss

four or more days of work per month.  Tr. 1345.  She also indicated that the assessed

limitations have existed since at least March 1, 2014.  Tr. 1345.  The ALJ agreed

with Ms. Conrad's assessment of a marked difficulty with social interaction but

found the rest of the opinion unpersuasive.

With regard to supportability, the ALJ found Ms. Conrad's assessment of

limitations is unsupported by her own treatment notes and relatively unremarkable

or benign findings.  Tr. 1102.  A medical opinion may be rejected if it is

unsupported by treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th

Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by

treatment notes).  The ALJ observed that Ms. Conrad's treatment notes generally

showed mental status findings of normal concentration and memory and linear,

logical though process.  Tr. 1102 (citing e.g., Tr. 1721, 1771, 1774, 1779, 1781-82,

1785, 1793, 1803, 1809, 1816, 1819, 1830-31, etc.).  The ALJ reasonably found that

the extreme limitations assessed by Ms. Conrad are not supported by her findings or

the mental status findings of other providers.

Plaintiff argues that not all findings were benign, noting that Ms. Conrad

indicated that Plaintiff was coping with anxiety and depressive symptoms and he

continued to avoid being around people.  ECF No. 8 at 20 (citing Tr. 1764).  Plaintiff

points out he was noted to be anxious, angry, dysthymic, or irritable at times, and he

had become angry and yelled at VA staff.  ECF No. 8 at 20 (citing Tr. 610, 703, 792,

802, 808, 943, 951, 989, 1045, 106).  However, this does not contradict the ALJ's

ORDER - 24

finding, as he agreed with Ms. Conrad's assessment of a marked limitation in social interaction and included social limitations in the RFC accordingly.

With regard to consistency, the ALJ found Ms. Conrad's assessment of limitations are not consistent with the medical evidence of record as a whole, and are particularly inconsistent with mental health records from the VA. Tr. 1102. The consistency of the medical opinion with the record as a whole is a relevant factor in weighing the medical opinion evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. The ALJ also found notes from other mental status exams and evaluations in the record generally indicated normal appearance, speech, attitude, affect, thought process and content, perception, memory, abstract thinking, judgment, and insight, with some variance in mood and affect. Tr. 1102 (citing e.g., Tr. 401, 415, 433, 479, 494, 547, 559, 718-19, 772, etc.). The ALJ's reasoning is supported by substantial evidence.

Lastly, the ALJ noted Ms. Conrad is not an acceptable medical source. Tr. 1102. The regulations effective for claims filed after March 27, 2017, require the ALJ to discuss the relative persuasiveness of all medical source evidence. 20 C.F.R. § 404.1520c(b). Ms. Conrad's status as a non-acceptable medical source is relevant primarily at step two. 20 C.F.R. § 404.1521. To the extent the ALJ assigned less weight to her opinion because she is not an acceptable medical source, the ALJ erred. However, the ALJ gave two legally sufficient reasons supported by

substantial evidence for the weight assigned to the opinion.  Ultimately, any error is harmless.  *See Carmickle*, 533 F.3d at 1162-63.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 8**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** August 30, 2023.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 26